UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA     )
                             )
     v.                       )         2:12-cr-00098-JAW
                             )
JECINTA WAMBUI NGIGE     )

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On September 9, 2013, the Court issued a guilty verdict in a jury-waived trial. *Minute Entry* (ECF No. 46). Before the finding of guilty, Ms. Ngige moved for specific findings of fact under Federal Rule of Criminal Procedure 23(c); this Order responds to Ms. Ngige's Rule 23(c) motion.

This case is unusual in that the Government and Ms. Ngige presented the Court with a stipulated record, which formed the sole factual basis for the Court's verdict. *Stipulation of the Parties* (ECF No. 37) (*Stipulation*). Neither the Government nor Ms. Ngige presented any testimony or exhibits apart from the Stipulation. Accordingly, the Court's factual findings mirror the facts in the Stipulation of the Parties, which the Court expressly adopts as its findings of fact under Federal Rule of Criminal Procedure 23(c). This result may dissatisfy Ms. Ngige, who—by making the Rule 23(c) motion—is likely seeking an explanation of why the Government's charge is not barred by the applicable statute of limitations. Viewed charitably toward Ms. Ngige, Rule 23(c) may envision such an explanation and, if not, the Court is not prohibited from giving one. To this end, the Court will

further explain its guilty verdict to allow Ms. Ngige to fully exercise, if she wishes to do so, her right of appeal.

First setting aside the statute of limitations issue, the Stipulation compels a guilty verdict.  To prove a conspiracy to violate 18 U.S.C. § 371, the Government must prove the following elements beyond a reasonable doubt: (1) that the agreement specified in the indictment and not some other agreement or agreements existed between at least two people to defraud the United States; (2) that Ms. Ngige willfully joined in that agreement, (3) that one of the conspirators committed an overt act during the period of the conspiracy in an effort to further the conspiracy. *Judge D. Brock Hornby's 2013 Revisions to Pattern Criminal Jury Instructions for the District Courts of the First Circuit* § 4.18.371(a) (updated Jun. 26, 2013).  The definition of "defraud the United States" includes obstructing or interfering with one of the United States Government's lawful functions, by deceit, or trickery, or dishonest means.   *See United States v. Goldberg*, 105 F.3d 770, 773 (1st Cir. 1997). The facts in the Stipulation confirm that Ms. Ngige entered into a sham marriage with Michael Frank, a United States citizen, "to acquire a change of her United States immigration status to which she would not otherwise have been entitled by making false representations to agencies of the United States Government about her marriage to and relationship to [Mr. Frank]." *Indictment* at 2 (ECF No. 2).

Ms. Ngige's defense to the conspiracy charge follows an extended train of logic: (1) that the indictment charges and the Stipulation describes only one act within the five-year statute of limitations period; (2) that even if Ms. Ngige engaged

2

in a conspiracy to defraud the United States with acts before the applicable statute

of limitations, the conspiracy based on the sham marriage was completed when her

sham husband refused to continue to participate; (3) that Ms. Ngige hatched a new

scheme—one based on the Violence Against Women Act (VAWA); and (4) that, even

though she acted on her new plan within the statute of limitations, there was no

conspiracy because a conspiracy requires the participation of more than one person.

To provide specific context, the grand jury indicted Ms. Ngige on June 13,

2012.  The applicable statute of limitations under 18 U.S.C. § 3282(a) is five years

"after such offense shall have been committed," meaning that in this case, acts

before June 13, 2007 would generally be beyond the statute of limitations.   As

alleged in the indictment, the one act performed after June 13, 2007 is:

> On August 6, 2007, in support of her I-360 VAWA petition, Defendant
> filed a report of Psychological Evaluation dated September 28, 2006.
> That report sets forth Defendant's narrative of her relationship with
> [Michael Frank], which contains material falsehoods.  On November 2,
> 2007, [the United States Citizenship and Immigration Service] denied
> Defendant's VAWA petition.

*Indictment* ¶ 9.  The parties' Stipulation confirms the accuracy of this allegation:

> On August 6, 2007, in support of her I-360 VAWA petition, Ms. Ngige
> filed a Report of Psychological Evaluation dated September 28, 2006.
> That report, drafted by Emily Carey, Ph.D., describes what Ngige told
> Dr. Carey about her relationship with Mr. Frank, including that:
>
> a.  They met in 2003 at a wedding in Massachusetts, began dating,
>     talked on the phone on a daily basis, and eventually moved in
>     together in Massachusetts;
> b.  They married a few months after meeting, had a small ceremony,
>     and went on a honeymoon in Maine;
> c.  Mr. Frank became emotionally abusive to her, until she
>     discontinued contact in April 2005 and filed for divorce in 2006.

*Stipulation* ¶ 18.  Paragraph eighteen of the Stipulation of the parties, which the Court has found as a fact, thus proves the indictment's allegation.

Under well-established law, "[a] conspiracy endures as long as the co-conspirators endeavor to attain the 'central criminal purposes' of the conspiracy." *United States v. Upton*, 559 F.3d. 3, 10 (1st Cir. 2009) (quoting in part *Grunewald v. United States*, 353 U.S. 391, 401 (1957)).  Where some portion of the conspiracy took place beyond the limitations period, the Government must prove beyond a reasonable doubt that "the conspiracy as . . . finally formulated, was still in existence on [June 13, 2007], and that at least one overt act in furtherance of the conspiracy was performed after that date."  *Grunewald*, 353 U.S. at 396.  In other words, "the crucial question . . . is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy." *Id.* at 397.

Consequently, the inquiry narrows to the nature of the conspiracy that Ms. Ngige and others decided to perpetrate.  Ms. Ngige seeks to constrain the conspiracy to include only the sham marriage and a fraudulent application for United States citizenship based on the asserted legitimacy of the sham marriage.  The Government defines the conspiracy was more broadly to include the use of the sham marriage to Mr. Frank to obtain United States citizenship.  The Court finds that the original conspiracy, as alleged, was broader than Ms. Ngige's limited view.

First, to support her position, Ms. Ngige cites *United States v. Hitt* 249 F.3d 1010 (D.C. Cir. 2001) for the proposition that "[t]he indictment's references to subsequent events do not point to acts in furtherance of the alleged conspirators' common goal and therefore may not be relied upon to extend the conspiracy to a period within the statute of limitations." *Id.* at 1017.  In *Hitt*, the Court of Appeals for the District of Columbia Circuit examined the indictment to determine whether the acts performed within the limitations period were part of the conspiracy the grand jury alleged.   *Id.* at 1015 ("To determine the scope of the alleged conspiratorial agreement, the court is bound by the language of the indictment"). The *Hitt* Court concluded that the within-time acts were not in furtherance of the conspiracy alleged in the indictment and therefore they could not extend the duration of the alleged conspiracy.  *Id.* at 1015-17.

Here, by contrast, the indictment alleges broadly that the "object of the conspiracy [was] for Defendant to acquire a change of her United States immigration status to which she would not otherwise have been entitled by making false representations to agencies of the United States Government about her marriage to and relationship with [Michael Frank]" and expressly alleged that her filing of the psychological report under her VAWA petition was part of that conspiracy.  *Indictment* at 2-4.  Unlike *Hitt*, the allegations in this indictment are both broad and specific enough to capture the within-time VAWA petition.  This is because filing the VAWA petition directly advanced Ms. Ngige's goal of "acquir[ing] a change of her . . . immigration status to which she would not otherwise have been

5

entitled." *Id.* Under the *Grunewald* standard, this act is sufficiently related to the scope of the conspiracy to establish her criminal liability.

The next issue is whether there is a "variance between the indictment and the facts proved at trial." *United States v. Franco-Santiago*, 681 F.3d 1, 7 (1st Cir. 2012). This problem arises when an indictment charges a broad conspiracy but the proven facts establish only a part of the conspiracy, or a smaller conspiracy. *Id.* Here, there is no such prejudicial variance because the Stipulation of the parties generally tracks the factual allegations in the indictment. Even though more specific in some respects than some portions of the indictment, the Stipulation's specificity does not narrow the scope of the conspiracy beyond what the indictment charged.

The Court turns next to the related issue of whether the "government may have proven that the defendant joined a smaller conspiracy that falls outside the statute of limitations, but failed to prove a broader overarching conspiracy that extended into the limitations period." *Id.* Here, the Stipulation confirms that Ms. Ngige entered into her marriage with Mr. Frank "for Ms. Ngige to be able to apply for lawful residency in the United States as the spouse of a U.S. citizen by marrying Frank and pretending to establish a life with him." *Stipulation* ¶ 2. Ms. Ngige's out-of-time actions in creating false documents to demonstrate that they were living together in Massachusetts, and in filing petitions with the United States Citizenship and Immigration Service (CIS), are consistent with the goal of this conspiracy. *Id.* ¶¶ 6-9.

Once Mr. Frank refused to continue cooperating, Ms. Ngige held to her strategy but changed her tactics.  She used her marriage to Mr. Frank in a slightly different way, but with the same goal: to secure a change in her immigration status. On January 31, 2006, she filed for divorce and alleged that the marriage was real. *Id.* ¶ 12.  On August 31, 2006, while the divorce was pending, she filed a Form I-360 under VAWA, contending that she was married and living with an abusive United States citizen—Michael Frank.  *Id.* ¶ 13.  In support of her VAWA petition, she re-filed with CIS many of the same documents she had filed under her earlier petition. *Id.* ¶ 14.  On September 21, 2006, shortly after filing her VAWA petition, she went to a clinical psychologist named Emily Carey, Ph.D. and told Dr. Carey a series of lies about her marriage, which resulted in an extensive twenty-three page psychological evaluation by Dr. Carey.  *Id.* ¶ 18; Attach. 6 (*Emily A. Carey, Ph.D.*, *Psychological Evaluation of Jecinta Ngige* Sept. 28, 2006) (*Carey Report*).  On July 15, 2007, CIS informed her that they could not act on her VAWA petition without "evidence to show that you or your children have been the subject of battery or extreme cruelty committed by Michael Frank."  On August 6, 2007, she filed Dr. Carey's psychological report in support of her VAWA petition.  *Stipulation* ¶ 18.

During her three hour, face-to-face interview with Dr. Carey, Ms. Ngige leveled a series of serious and false allegations against Mr. Frank, which detailed his excessive drinking, his potential use of drugs, and his emotional abuse of her; she also falsely said that she had suffered from depression and panic attacks resulting from his abuse. *Carey Report* at 2-3, 17.  Based Ms. Ngige's lies, Dr. Carey

7

diagnosed her as suffering from Major Depression, a recognized psychological condition under the Diagnostic and Statistical Manual of Mental Disorders IV-R, which Dr. Carey opined was "a direct result of the abuse and abandonment she experienced in her marriage with Michael." *Id.* at 14. In the report, Dr. Carey expressed her "strong recommendation, as a clinical psychologist, that Jecinta Ngige needs to remain here in the United States in order to continue her process of emotional healing from the emotional abandonment, as well as emotional and economic abuse she suffered in the course of a bona fide marriage to her U.S. citizen husband, Michael Frank." *Id.* at 20. Virtually nothing that Ms. Ngige represented about her marriage to Mr. Frank in the divorce proceedings and VAWA immigration petition was true.

The Court finds beyond a reasonable doubt that Ms. Ngige's decision to file a VAWA petition with CIS based on false allegations about her marriage with Mr. Frank was only a change in tactics, not a new conspiracy. As of August 6, 2007, the date she filed the Carey Report, the object of the conspiracy was still to obtain a change Ms. Ngige's immigration status, and the object had not yet been achieved. Furthermore, the means to achieve the conspiracy's goal—to lie about the true nature of her marriage to Mr. Frank—was the same for her initial alien spouse petition and her later VAWA petition. In short, the Court finds beyond a reasonable doubt that, when she filed the VAWA petition, Ms. Ngige was engaging in the same conspiracy in slightly different clothes.

Finally, the Court does not find that Mr. Mbugua had withdrawn from the conspiracy as of August 6, 2007, the date Ms. Ngige filed Dr. Carey's psychological assessment.  Once the Government "presented sufficient evidence to show a conspiracy . . . has continuing purposes or goals, the burden is on the defendant to prove that the conspiracy was terminated or that [she] took affirmative steps to withdraw."  *United States v. Eppolito*, 543 F.3d 25, 49 (1st Cir. 2008).  The Stipulation reflects that Ms. Ngige paid Mr. Mbugua to introduce her to a United States citizen who was willing to marry her for money.  *Id.* ¶ 2.  Ms. Ngige traveled to Maine where she met Mr. Mbugua and she was introduced to Mr. Frank.  *Id.* ¶ 3. What followed was a sophisticated ruse, which included false documents together with false immigration petitions, and then a further elaborate scheme, similar to the first, to generate and file false documents together with false immigration petitions under VAWA.  There is no evidence that Mr. Mbugua, who was shepherding Ms. Ngige through the outset of this complicated scheme, ever withdrew from the conspiracy, leaving Ms. Ngige on her own to navigate the intricate steps of a VAWA petition.  Nor did the conspiracy reached its natural conclusion with Ms. Ngige achieving a change in immigration status.  Without some evidence (and there is none) that Mr. Mbugua left the conspiracy, the Court does not find he did.

For all of these reasons, the Court finds Ms. Ngige guilty as charged in Count One of the Indictment (ECF No. 2).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 18th day of September, 2013